AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAR 29 2018

MATTHEW J. DYKMAN
CLERK

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

A small cell phone bearing serial number 404CYAS0133584. Currently in possession of the FBI Albuquerque Field Office, Albuquerque, New Mexico.

Case No. 18 MR 272

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the ____________ District of ________________ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18 U.S.C. § 113(a)(8) | Assault of a spouse, intimate partner, or dating partner by strangulation |
| 18 U.S.C. § 922(g)(1) | Felon in possession of a firearm or ammunition |
| Title 18 U.S.C. § 2241(a) | Aggravated Sexual Abuse |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: ____________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Thaddeus Clancy, Special Agent - FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: March 29, 2018

[signature]
*Judge's signature*

City and state: Albuquerque, New Mexico

KAREN B. MOLZEN
U.S. MAGISTRATE JUDGE
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br>A small cell phone bearing serial number 404CYAS0133584. Currently in possession of the FBI Albuquerque Field Office, Albuquerque, New Mexico. | Case No. ___________________ |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

## AFFIDAVIT

Your Affiant, Thaddeus Clancy, having been duly sworn, does hereby depose and say:

## Introduction

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I have been a Special Agent (SA) of the Federal Bureau of Investigation (FBI), United States Department of Justice, since March 2017. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request arrest warrants.

3. I am currently assigned to the FBI's Albuquerque Violent Crime Program, as such, I am authorized to investigate violent crimes to include felon in possession and crimes occurring in Indian Country. The information set forth in this affidavit was derived from my own investigation and/or communicated to me by other sworn law enforcement officers. Because this affidavit is submitted for the limited purpose of securing a search warrant your Affiant has not included each and every fact known to me concerning this investigation. This affidavit is intended to show only that there is sufficient probable cause to support a search warrant for the cellular telephone more fully described in Attachment A for items more fully described in Attachment B.

## Relevant Statutes

4. This investigation concerns an alleged violation of Title 18 U.S.C. § 1153 (b) Offences committed in Indian Country; Title 18 U.S.C. § 113(a)(8) Assault of a spouse, intimate partner, or dating partner by strangling, suffocating, or attempting to strangle or suffocate; Title 18 U.S.C. § 2241(a) Aggravated Sexual Abuse; Title 18 U.S.C. §

2246(2)(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; Title 18 U.S.C. § 922 (g)(1) Felon in Possession of a Firearm or Ammunition.

**Identification of the Device to Be Examined**

5. The property to be searched was seized by FBI during a search warrant that was executed on 02/18/2018 at #14 San Jose Circle, Acoma, NM (hereinafter referred to as the "Device"):
   a. A small cell phone bearing serial number 404CYAS0133584

6. The Device is currently located at the Federal Bureau of Investigation Albuquerque Field Office Evidence Control Room.

7. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

**Facts and circumstances establishing probable cause**

8. On February 17th, 2018, the Pueblo of Acoma Police Department dispatch received a phone call at approximately 19:57 from an anonymous caller (here after referred to as "Caller"). Caller reported a domestic abuse in progress at #14 San Jose Circle, Acoma, NM, and stated that a female was being physically assaulted and raped with a stick. Caller called dispatch again at approximately 20:10 and reported there was a woman being raped with a stick, "check the bed," and there was blood all over.

9. At approximately 20:04, Pueblo of Acoma Police Officer Cherise Wanye and Officer Valentino Kie arrived at the #14 San Jose Circle, Acoma, NM, in marked units and in full uniform with visible markings displayed. Officer Wanye and Kie identified themselves multiple times to the residence with no response. Officer Wanye heard a "whimpering" noise at the door. Officer Wanye and Kie knocked on the door, which opened due the door not having any locking device. Officer Wanye and Kie announced their presence and entered the building on exigent circumstances.

10. Upon clearing the house, Officers observed E.A. (year of birth 1982) (here after referred to as Jane Doe) naked in a bedroom with JOSPEH TSETHLIKAI (year of birth 1976) near her wearing only shorts. Officer Wanye observed blood around Jane Doe's mouth and pubic area where a visible scratch was observed. A stick approximately 16-18 inches in length was observed on the bed.

11. Jane Doe was examined at Albuquerque SANE Collaborative on February 18, 2018, by a Sexual Assault Nurse Examiner (SANE). SANE nurse Gail Starr stated Jane Doe had bruising all over her body, bruising on her neck consistent with strangulation, bite mark on her breast, and bruising on her genitals that was consistent with sexual assault.

12. Jane Doe was interviewed by your Affiant, SA Jeff Rosenquist, and Bureau of Indian Affairs SA James Jojola on February 18th, 2018. On the evening of February 17th, 2018, Jane Doe was drinking with TSETHLIKAI and her Aunties niece. Jane Doe did not

know her name and referred to her as "Home Girl". During the evening, TSETHLIKAI and Jane Doe ended up in their bedroom. TSETHLIKAI began "beating the fuck" out of her and accusing Jane Doe of cheating. TSETHLIKAI sat on her legs to restrict her movement and repeatedly punched her face. Jane Doe attempted to use her arms to conceal her face and protect herself. TSETHLIKAI proceeded to place his hands around Jane Doe's neck and pushed down with both hands. Jane Doe was unable to breathe and was unaware how long she was “choked”; however, she believed she did not lose consciousness. Jane Doe stated there were past occasions when TSETHLIKAI has physically assaulted her with a stick, a baton, a bottle, a machete, and with his bare hands. On at least one occasion, TSETHLIKAI has held a firearm to Jane Doe’s head and placed it in her mouth and stated, “I’ll kill you stupid bitch”. TSETHLIKAI routinely threatened to harm Jane Doe, Jane Doe’s children, and grandchildren.

13. A lawful search warrant was executed on February 18th, 2018, at #14 San Jose Circle, Acoma, NM. Evidence was recovered including: a machete, handgun, ammunition, multiple sticks, a note, and a small cell phone bearing serial number 404CYAS0133584. Jane Doe identified the cell phone as belonging to TSETHLIKAI.

14. On February 21st, 2018, R.M. (year of birth 1974) (here after referred to as Witness #1) was interviewed by your Affiant and Bureau of Indian Affairs SA James Jojola. Witness #1 stated she was with TSETHLIKAI and Jane Doe during the day and evening of February 17th, 2018. Witness #1 passed out and woke up alone in the living room at around 6:30pm – 7:00pm. Witness #1 heard what she believed to be consensual sexual intercourse and then an “agony cry” coming from the bedroom. Witness #1 heard Jane Doe say, “Stop”, “I love you”, “I didn’t do anything.” Witness #1 was concerned and entered the bedroom where she heard the noise come from. Witness #1 observed Jane Doe and TSETHLIKAI were naked, TSETHLIKAI was on top of Jane Doe, and blood was all over. Jane Doe looked beaten and had blood coming from her eyes, mouth, and noise. Jane Doe had bruising on her chest. Jane Doe either had blood on her nipples or her nipples were bitten off. Witness #1 attempted to pull TSETHLIKAI off of her and noticed more damage to her body. A grey stick was inside Jane Doe’s vagina. Witness #1 described the grey stick as having a similar diameter to an axe handle and was not sure how long it was. Witness #1 observed approximately 12 inches of the stick protruding from her genitals. Witness #1 attempted to pull the grey stick out of Jane Doe to relieve the pain but was unable to remove the stick from her vagina. Witness #1 decided to call the police and went to her nearby family’s house to call the police. Witness #1 was able to convince someone in the house to call the police; however, Witness #1 does not recall who called the police.

15. On February 27th, 2018, SA Rachel Hickox interviewed Jane Doe. Jane Doe disclosed that TSETHLIKAI put his hands around her neck and applied enough pressure that she could not breathe. Jane Doe stated her throat hurt and she had trouble speaking the day after the incident and that her lips were blue and looked like she had been choked. She also indicated that the upper part of her neck and her entire face was red and swollen.

16. TSETHLIKAI and JANE DOE have been in an intimate relationship and living together since September 2017.

17. TSETHLIKAI is an enrolled member of Zuni Pueblo.

18. Jane Doe is an enrolled member of Acoma Pueblo.

19. #14 San Jose Circle, Acoma, NM is located within the exterior boundaries of the Acoma reservation.

20. TSETHLIKAI was previously convicted of battery against a household member and aggravated assault, crimes punishable by imprisonment for a term exceeding one year.

21. Based on my training and experience, firearms and ammunition are not manufactured in the state of New Mexico; therefore, the handgun and ammunition found in TSETHLIKAI's residence were transported in interstate or foreign commerce.

22. Based on my training and experience, and in speaking with other law enforcement officers; people who are in intimate partner, or dating partner relationships tend to document their relationship with photos, text messages, etc.

23. Based on my training and experience, and in speaking with other law enforcement officers; your Affiant knows that people involved in illegally obtaining firearms often utilize cellular telephones to document them or facilitate the transaction of firearms through text messaging, photo-sharing, internet chat, internet applications, e-mails, phone calls, and any other cellular device capable communications.

24. Based on the information contained within this affidavit, combined with my training and experience, I believe the evidence items contained within "Attachment B" and incorporated herein by reference may be present within the Device.

## **Technical Terms**

25. Based on my training and experience, I use the following technical term to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global

positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can

work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

26. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

**Electronic Storage and Forensic Analysis**

27. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the devices. This information can sometimes be recovered with forensics tools.

28. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

29. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

30. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**Electronic Media**

31. Your Affiant knows that a cellular telephone has the ability to take photographs or videos, and store those images and videos in digital form. Additionally, cellular telephones are portable and capable of being stored on one's person.

32. Your affiant knows that a subscriber identity module or "sim card" is utilized in cellular telephone technology. The sim card can store data for telephone subscribers such as user identity information, location information, subscriber phone number, network authorization data, personal security keys, contact lists, and stored text messages.

33. Your Affiant knows that many cellular telephones, "smart phones," and Personal Digital Assistants (PDA's) are capable of accessing the Internet. The Internet is a worldwide network that connects computers and allows communication and transfer of data, information, and images across state and national boundaries. Individuals who use the Internet can communicate electronically by using e-mail. E-mail messages can contain text, data, and images. This type of communication is private in that it is directed from one Internet user to another. Internet users can also communicate using chat rooms and instant messaging. Both chat rooms and instant messaging incorporate "real time" communication between Internet users. Instant messaging, like e-mail, is private, in that it is one Internet user communicating specifically, and exclusively, with another. Internet Service Providers such as America Online (AOL), and web sites such as Yahoo! provide software and venue for such one to one contact. The Internet offers a number of facilities which allow users to access, distribute, and exchange information including the World Wide Web (WWW), File Transfer Protocol (FTP), electronic e-mail (E-mail), and postings on newsgroups. The WWW allows users to display and access data in a multimedia format. FTP is a method of distributing and receiving files between computer systems. A newsgroup is an Internet site that is devoted to a particular area of interest or discussion. Users may send or post messages and responses to be read at any time by others, much like a bulletin board.

34. Your Affiant knows that computer software is digital information, which can be interpreted by a computer, cell phone, PDA, or related components to direct the way they work. Software is stored in electronic, magnetic, optical or other digital form. It commonly includes programs to run operating systems, applications such as word processing, graphics or spreadsheet programs, utilities, compilers, interpreters and communications programs.

35. Your Affiant knows that passwords and data security devices are designed to restrict access to, or hide, software, documentation or data. Data security devices may consist of hardware, software or other programming code. A password, a string of alpha-numeric and/or special characters, usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips and circuit boards. Data security software or digital codes may include programming code that creates "test" or "hot" keys that perform pre-set functions when depressed. "Hot" keys can be designed to erase, or otherwise render unusable, data that was contained within computer memory storage devices.

36. Your Affiant knows that documents can be created through the use of software programs, and that those documents can be used to facilitate the commission of crimes. In some cases, the mere possession of certain types of documents constitutes criminal conduct.

37. Your Affiant knows that many cellular phones and PDAs can operate as digital cameras and video recording equipment and have the capabilities of capturing images of evidentiary value. In addition, a digital camera is capable of allowing the user to view images that have been transferred from a computer via external media, such as a media card, or directly downloaded from the computer to the camera's internal memory.

38. Your Affiant knows through training and experience, that those persons who commit and/or conspire to commit violent crimes use cellular telephone as a means to communicate with each other in furtherance of their conspiracy.

39. Although some of the records called for by this warrant might be found in the form of user-generated documents (such as word processor, picture and movie files), cellular telephones and PDAs can contain other forms of electronic evidence that are not user-generated. In particular, a cellular telephone or PDA may contain records of how the device has been used, the purposes for which it was used and who has used these records.

40. The types of evidence described above may be direct evidence of a crime, indirect evidence of a crime indicating the location of evidence or a space where evidence was once located, contextual evidence identifying or excluding a particular user of the device. All of these types of evidence may indicate ownership, knowledge and intent.

41. This type of evidence is not "data" that can be segregated, that is, this type of data cannot be abstractly reviewed and filtered by a seizing or imaging agent and then transmitted to investigators. Rather, evidence of this type is a conclusion, based on a review of all available facts and the application of knowledge about how a device behaves and can be

used. Therefore, contextual information necessary to understand the evidence described in Attachment B also falls within the scope of the warrant.

**Search and Seizure**

42. Your Affiant knows based upon training, experience, and information relayed by law enforcement officers and others involved in the forensic examination of electronic media that data can be stored on a variety of systems and storage devices including the items described in Attachment B. Searches and seizures of electronic media requires agents to seize the media described in Attachment B to be processed off-site by a qualified computer expert in a laboratory or other controlled environment. This is true because of the following:

   a. Searching electronic media is a highly technical process which requires specific expertise and specialized equipment. There are so many types of electronic media in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with personnel who have specific expertise in the type of electronic media, software application or operating system that is being searched.

   b. Searching electronic media requires the use of precise scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data. Electronic media may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since electronic media is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

   c. Users can attempt to conceal data within electronic media and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband or instrumentalities of a crime.

**Conclusion**

43. Based on all of the above information, your Affiant submits there is probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

44. Assistant United States Attorney Raquel Ruiz Velez has reviewed and approved of this application.

45. I swear that this information is true and correct to the best of my knowledge.

Thaddeus Clancy, Special Agent - FBI

SUBSCRIBED and SWORN to before me this 29 day of March, 2018.

United States Magistrate Judge

## ATTACHMENT A

The Samsung cellular phone to be searched is described below:

1. A small cell phone bearing serial number 404CYAS0133584. Currently in possession of the FBI Albuquerque Field Office, Albuquerque, New Mexico

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

The property for which authorization to be seized, viewed, and analyzed is sought:

1. All visual depictions (including images, videos, and any type of computer formatted file) depicting evidence of aggravated sexual abuse, assault of a spouse, intimate partner, or dating partner by strangulation and/or felon in possession of a firearm or ammunition.

2. Any communications relating to evidence of aggravated sexual abuse, assault of a spouse, intimate partner, or dating partner by strangulation and/or felon in possession of a firearm or ammunition.

3. Any communications relating to aiding or assisting in the commission of aggravated sexual abuse, assault of a spouse, intimate partner, or dating partner by strangulation and/or felon in possession of a firearm or ammunition.

4. All documents, web history, and communications constituting or demonstrating any communications with any person or groups of persons in regards to the commission of aggravated sexual abuse, assault of a spouse, intimate partner, or dating partner by strangulation and/or felon in possession of a firearm or ammunition.

5. All documents, web history, and communications constituting or demonstrating any communications with Jane Doe in regards to documenting their relationship.

6. Files and other information tending to establish the identity of person or persons using or having the dominion and control over the cellular telephone.



KBM